**UNITED STATES**

v.

**Captain Carla J. LANCASTER, 513–78–8145, United States Air Force.**

**ACM 29461.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 May 1991.

Decided 29 March 1993.

Appellate Counsel for the Appellant: Major Mary C. Yastishock (argued), Colonel Jeffrey R. Owens, Lieutenant Colonel Terry J. Woodhouse, Major Alice M. Kottmyer, Major George F. May, and Mr. David E. Wheeler, Esquire.

Appellate Counsel for the United States: Captain Thomas E. Wand (argued), Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, and Major Paul H. Blackwell, Jr.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

This started out as a case about a nurse charged with stealing controlled drugs from her duty section in a hospital ward and using them. The instructions of the military judge and the findings of the members changed it into a case about whether it is conduct punishable under Article 112a, UCMJ, 10 U.S.C. § 912a, for a military member to use a controlled prescription drug for an ailment other than the one for which the drug was prescribed. We hold that such use is not punishable under the UCMJ, and we set aside the findings of guilty.

Captain Lancaster was charged with stealing and using Demerol and wrongfully using oxycodone.[1] The members found her not guilty of stealing or using Demerol but guilty of wrongfully using oxycodone.

In September 1990 Captain Lancaster was assigned to the cardio-thoracic ward at Wilford Hall USAF Medical Center. Her duties involved primarily the care of patients who had undergone heart surgery or were recovering from heart attacks. She often administered Demerol, oxycodone, and other medications to patients. On the morning of 27 September 1990, it was discovered that several packages of drugs, including Demerol, in the ward's medication supplies had been tampered with. Four days earlier similar tampering with a drug package was discovered. In the late afternoon of 27 September 1990, Captain Lancaster appeared to be under the influence of some drug, as a result of which her commander authorized a seizure of a urine sample for analysis. Her sample tested positive for oxycodone and Demerol.

Captain Lancaster denied stealing or knowingly using Demerol and suggested someone must have put it in a cup of soda she kept on top of her medications cart. She admitted she had used Tylox, a brand name form of oxycodone, on the morning she provided the urine sample. She also testified, however, that she did not believe her use of Tylox was wrongful because it was prescribed to her. Dental records showed that Tylox was prescribed to her in 1988 for pain caused by the removal of a wisdom tooth. She testified she took the Tylox remaining from her 1988 prescription to relieve pain caused by an injured and infected hip.[2]

Several registered nurses who appeared as defense witnesses testified it was common practice for persons to whom prescription drugs were prescribed to keep remaining unused amounts of drugs and to use them later for other ailments. The prosecution presented no rebuttal to this evidence, and it did not ask the military judge to take judicial notice of any directive specifying that such use was prohibited.

---

1. Articles 112a, 121, UCMJ; MCM, Part IV, paragraphs 37, 46 (1984). Demerol is a proprietary form of meperidine. Meperidine and oxycodone are synthetic analogs of opiates; both are Schedule II controlled substances. *See* 21 U.S.C. § 812 (1988).

2. The testimony of a number of witnesses confirmed the existence of the hip injury. Captain Lancaster's husband also testified that she took Tylox on the morning before the urine sample was taken.

The prosecution attacked the credibility of the testimony concerning Captain Lancaster's use of Tylox. There was evidence that two capsules of Percocet (another drug containing oxycodone) might have been missing from the ward on the day in question. As a result, there was evidence before the members of several different theories concerning the possible source of the oxycodone in Captain Lancaster's urine sample.

In his instructions on findings, the military judge properly told the members they could not find Captain Lancaster guilty of wrongful use of Demerol or oxycodone unless they found beyond a reasonable doubt that such use was wrongful. He defined wrongful use as follows:

> Use of a controlled substance is wrongful if it is knowing and without legal justification or authorization. By way of example, use of a controlled substance would not be wrongful if it was 1) done pursuant to legitimate law enforcement activity, or 2) *done pursuant to legitimate medical practice,* or 3) done unknowingly by a person who ingests something not knowing that it contains an illicit drug or controlled substance.... To be wrongful, use of those substances must be not only without legal justification or excuse, it must also be knowing and voluntary. Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary, but the drawing of this inference is not required (emphasis added).

The military judge provided no definition of the term "legitimate medical practice" in his instructions. Captain Lancaster argues the military judge's instructions were insufficient guidance for the members as to the elements of the offense of wrongful use of oxycodone. In the specific circumstances of this case, we agree.

The military judge has an obligation to inform the members of each element of every charged or lesser included offense. *See* Article 51(c), UCMJ, 10 U.S.C. § 851(c); R.C.M. 920(e)(1). Depending on the circumstances of each case, it may be necessary, in order to provide a complete instruction, to give a detailed definition of the terms used in one or more of the elements. *United States v. Mance,* 26 M.J. 244 (C.M.A. 1988), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988) ("knowledge" must be further defined in wrongful drug use cases); *United States v. Johnson,* 24 M.J. 101 (C.M.A.1987) (error not to define "national defense material" in a sabotage case); *United States v. Brauchler,* 15 M.J. 755 (A.F.C.M.R.1983), *pet. denied,* 18 M.J. 21 (C.M.A.1984) (error not to define "indecent liberties" in a specification alleging conduct unbecoming an officer).

The instruction on "wrongfulness" quoted above told the members Captain Lancaster's use of oxycodone would not be wrongful if she took it pursuant to legitimate medical practice. It then gave them no guidance as to what legitimate medical practice is concerning a patient taking leftover prescription drugs for another ailment. During the discussion among the military judge and counsel on proposed instructions, the defense counsel raised the issue of further defining legitimate medical practice, but the military judge stated, "[A]s we well know, if it wasn't prescribed for that injury, then it was not pursuant to medical practice." His solution was to give the members an instruction on the defense of mistake of fact, as follows:

> [T]he defense has raised the issue of a mistaken belief on the part of the accused. The accused has testified that on the morning of 27 September 1990, she used oxycodone for pain caused by an infected hematoma on her right hip, although this substance had not been prescribed by an authorized physician for that hip injury. She further testified that the oxycodone she used had been in her possession since 1988 when it was prescribed for her to take for pain caused by the removal of a wisdom tooth by her dentist. She stated that since the oxycodone she used was the leftover and unused portion of a substance that had been lawfully prescribed for her in 1988, that her use to alleviate the pain from the hip injury on the morning of 27 September 1990 was therefore not wrongful

but pursuant to legitimate medical practice. If the accused was honestly under such a mistaken belief at the time she used the oxycodone, then she cannot be found guilty of the wrongful use of that substance, for such an honest mistaken belief, no matter how unreasonable it might have been, is recognized by the law as a defense.

■ There are several deficiencies in this instruction. First, it purports to apply the defense of mistake of fact to a situation where any mistake would have amounted only to ignorance of the law, which is no defense at all. *Mance*, 26 M.J. at 249. In that respect the instruction was a windfall for Captain Lancaster, and not an error to her prejudice. The second deficiency, however, is that the instruction has as a necessary predicate that the use of leftover prescription drugs for another ailment constitutes wrongful use as a matter of law. We find no basis for this conclusion.

We have found no specific provision in any statute or punitive regulation prohibiting a person for whom a drug is prescribed from retaining unused amounts of the drug and later taking it for another ailment. We have found no court decision or commentary interpreting any criminal statute as creating such an offense. In fact, what little authority exists tends in the opposite direction.

The Court of Military Appeals has said several times in dicta, "[A person] who possesses a drug pursuant to a valid prescription, . . ., is of course relieved of criminal responsibility." *United States v. West*, 15 U.S.C.M.A. 3, 6, 34 C.M.R. 449, 452, 1964 WL 5046 (1964) (quoting *United*

States v. Greenwood, 6 U.S.C.M.A. 209, 213, 19 C.M.R. 335, 339, 1955 WL 3447 (1955)). Until 1982, the Manual for Courts–Martial contained similar language: "A person's possession of a drug is innocent when the drug has been duly prescribed for him by a physician and the prescription has not been obtained by fraud. . . ." MCM, Chapter XXVIII, paragraph 213a (1951); MCM, Chapter XXVIII, paragraph 213b (1969).[3] The phrase "duly prescribed" has been interpreted as "no more than prescribed by a physician for legitimate medical purposes." *United States v. Moore*, 24 C.M.R. 647, 650, 1957 WL 4860 (A.F.B.R.1957).[4]

The Manual for Courts–Martial language quoted above is specifically addressed to the offense of wrongful possession of drugs, but the same concept has also been applied to charges of the wrongful use of drugs. *See, e.g., West*, 34 C.M.R. at 452; *Greenwood*, 17 C.M.R. at 338; *United States v. Jones*, 28 C.M.R. 885, 890, 1959 WL 3568 (A.F.B.R.1959). The Court of Military Appeals has found it proper to consider "possession principles in addressing the elements of a use offense." *Mance*, 26 M.J. at 258 (Sullivan, J., concurring).

■ Accordingly, we conclude the military judge erred when he gave instructions which necessarily implied that the use of leftover prescription drugs for a different ailment constitutes wrongful use as a matter of law.

■ The defense counsel did not formally object to the relevant instructions, although he did request the military judge to instruct the members that if Captain Lan-

---

3. In 1982, Change 7 to the 1969 Manual for Courts–Martial deleted this language. MCM, Chapter XXVIII, paragraph 213g (1969 Revised Edition, Change 7); MCM, Part IV, paragraph 37c(5) (1984). This change occurred prior to the enactment of Article 112a, UCMJ by the Military Justice Act of 1983. Neither the enactment of Article 112a nor the deletion of this language from the Manual for Courts–Martial appears to have intended to change the view that possession of drugs prescribed by competent medical authority is generally not wrongful.

4. We found no authority stating that the mere passage of time can make the possession of a

validly prescribed drug wrongful. Air Force Regulation (AFR) 30–2, Part Two, *Substance Abuse Control Program*, paragraph 3–3c(2)(a) (1988), specifically exempts the use and possession of a prescription drug from its definition of drug abuse if the "prescription was not obtained by fraud or misrepresentation and the drug is used properly." "Legal Drug Misuser" is defined as "[o]ne who improperly or illegally used prescription or over-the-counter medication." AFR 30–2, Part Two, paragraph 3–3c(3)(a)1b. The regulation does not define improper or proper use.

caster possessed Tylox previously prescribed for her, that *possession* was lawful. The defense counsel submitted his own draft of a mistake of fact instruction that was quite similar to the mistake of fact instruction ultimately given by the military judge. We find it unnecessary to decide whether the position taken by the defense counsel amounts to waiver of the instructional issue. This Court has previously held that we will not apply the waiver doctrine to erroneous instructions concerning elements of an offense. *United States v. Alford*, 31 M.J. 814 (A.F.C.M.R.1990).

■ There remains the question whether the error may have prejudiced Captain Lancaster or was harmless beyond a reasonable doubt. *See Mance*, 26 M.J. at 254–56. The members might have found Captain Lancaster guilty even if they believed her testimony concerning her use of the Tylox, if they further found that she did not think her use was pursuant to legitimate medical practice. They might have entirely disbelieved her testimony concerning the use of Tylox and inferred wrongfulness from the urinalysis results. *See Mance*, 26 M.J. at 252–54. They also could have found Captain Lancaster used Percocet she took from the ward. The problem is that we have no way of knowing what theory the members relied upon. Since one of the possible theories of guilt open to them was based on instructions we find to be erroneous, there is a clear risk that the instructions unfairly prejudiced the findings.

Accordingly, the findings of guilty and the sentence are set aside.[5] A rehearing is authorized.

Senior Judge LEONARD and Judge JAMES concur.

---

5. Appellant's remaining assertions of error are therefore moot.