# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32367**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Austin J. MULL**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 June 2017

———————————

*Military Judge:* Matthew S. Ward.

*Approved sentence:* Bad-conduct discharge, confinement for 7 months, and reduction to E-1. Sentence adjudged 3 November 2015 by SpCM convened at Joint Base Langley–Eustis, Virginia.

*For Appellant:* Major Johnathan D. Legg, USAF.

*For Appellee:* Major J. Ronald Steelman III, USAF; Gerald R. Bruce, Esquire.

Before THE COURT EN BANC.

Chief Judge DREW delivered the opinion of the court, in which Senior Judge MAYBERRY, Senior Judge J. BROWN, Senior Judge JOHN-SON, Judge SPERANZA, Judge HARDING, Judge MINK, and Judge C. BROWN joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

DREW, Chief Judge:

Appellant, a medical technician, was tried at a special court-martial composed of military judge alone. In accordance with his pleas, he was found guilty of fraudulent enlistment by falsely representing his preservice use of

marijuana and heroin; dereliction of duty by willfully failing to properly dispose of used vials of various prescription drugs; divers wrongful use of heroin; divers wrongful use of ketamine hydrochloride, a Schedule III controlled substance; divers wrongful use of hydromorphone, a Schedule II controlled substance; divers wrongful use of diazepam, a Schedule IV controlled substance; and knowingly filing a false report of a crime with a law enforcement official; in violation of Articles 83, 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 883, 892, 912a, 934. The military judge sentenced him to a bad-conduct discharge, confinement for eight months, and reduction to E-1. Pursuant to a pretrial agreement, the convening authority reduced the confinement to seven months, and otherwise approved the sentence.

Appellant contends that (1) his plea to wrongfully using diazepam was improvident, in that he possessed a prescription for the controlled substance during the charged time frame, and (2) his plea to fraudulent enlistment was improvident, in that he disclosed and received a waiver for using marijuana in conjunction with a preservice driving under the influence (DUI) arrest. We find no prejudicial error and affirm the findings and sentence.[1]

## I. BACKGROUND

On 29 April 2015, Appellant's wife, a Seaman in the United States Navy, reported to the Air Force Office of Special Investigations (AFOSI) that she suspected her husband was using heroin and other illegal drugs. She had found various vials, apparent drug residue, and drug paraphernalia in and around her home and in Appellant's clothing. She also reported that Appellant had lied to her about being robbed, to explain money missing from their bank account, and that Appellant subsequently filed a false report of the fake robbery with local law enforcement.

During a pretext phone call with his wife, Appellant admitted to having used heroin every day during the previous four months and currently feeling "dope sick" and suffering from withdrawals, as a result of not using heroin for two days. When interviewed by AFOSI, Appellant admitted to using marijuana, oxycodone, and heroin before enlisting in the Air Force and, after ceasing all illegal drug use upon entering the Air Force, to relapsing and again

---

[1] The military judge failed to announce that the court was assembled. *See* Rule for Courts-Martial (R.C.M.) 911 ("The military judge shall announce the assembly of the court-martial."). Assembly of the court-martial is significant for a variety of reasons. *See* R.C.M. 911, Discussion. In the present case, however, we find that the military judge's omission had no substantive effect upon the proceedings and was thus harmless.

using heroin on a daily basis which he purchased for $35 to $65 per day. Despite his preservice drug use, when Appellant applied to enlist in the Air Force he provided the following responses on his *USAF Drug and Alcohol Abuse Certificate*[2] on 22 May 2012:

| INITIAL YES/NO BOXES AS APPLICABLE | YES | NO |
|---|---|---|
| I have read and understand the definition of the terms above. | *AJM* | |
| Have you ever used or experimented with marijuana? *(Prior marijuana use is not disqualifying for enlistment or appointment, unless you are determined to be a chronic user or psychologically dependent, have been convicted or adversely adjudicated for marijuana involvement. Preservice marijuana use may render you ineligible for certain skills.)* | | *AJM* |
| Have you ever experimented with, used, or possessed any illegal drug or narcotic? | | *AJM* |

Appellant did discuss with his recruiter a DUI arrest[3] in which the intoxicating substance was marijuana. The recruiter requested and Appellant received a waiver for the marijuana DUI incident prior to Appellant's enlistment.

Appellant worked as a medical technician at Joint Base Langley–Eustis, Virginia. On many different occasions whenever a nurse would allow him to administer intravenous medications, instead of properly disposing of the unused portions afterwards, he would simulate disposing of the partially used vials into the appropriate disposal container by opening the container, extending his arm over it, palming the vial, and secreting the vial into his pocket. Appellant used this and similar methods to acquire ketamine hydrochloride, diazepam, nalbuphine, hydromorphone, and fentanyl. Appellant took the vials home and later wrongfully injected himself with the medications.

As a result of a herniated disc injury, Appellant was properly prescribed diazepam to treat the pain. In addition to using the diazepam as prescribed to treat his injury, Appellant used his diazepam at times when he did not need it to treat his injury, but instead in an effort to augment his heroin use and to help control his withdrawals from heroin.

---

[2] Air Force Info. Mgmt. Tool 2030, *USAF Drug and Alcohol Abuse Certificate* (19991201, V1) (AF IMT 2030).

[3] The record is unclear whether Appellant's DUI resulted in a conviction or other adjudication.

## II. DISCUSSION

### A. Standard of Review

A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)). The military judge must question the accused under oath about the offenses to ensure there is an adequate factual basis for a guilty plea. Rule for Courts-Martial (R.C.M.) 910(e); *see* Article 45(a), UCMJ, 10 U.S.C. § 845(a). "It is an abuse of discretion for the military judge to accept a guilty plea without an adequate factual basis . . . ." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012). However, we look to the entire record to determine whether there is a substantial basis to question the guilty plea. *United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002).

"A plea is provident so long as Appellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Moon*, 73 M.J. at 386 (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)). We "must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (quoting *Hines*, 73 M.J. at 124).

### B. Analysis

#### 1. Wrongful Use of Diazepam

Appellant asserts that, notwithstanding his admission of guilt during his *Care*[4] providence inquiry, his guilty plea was improvident because he had a prescription for the diazepam he used that was valid during the charged time frame. Appellant acknowledges this court's decision in *United States v. Pariso*, 65 M.J. 722, 724 (A.F. Ct. Crim. App. 2007), but argues that it is inconsistent with our superior court's decisions in *United States v. West*, 34 C.M.R. 449, 452 (C.M.A. 1964) (possession of controlled substances by a medical technician for irregular inventory purposes not a wrongful possession as

---

[4] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

charged) and *United States v. Greenwood*, 19 C.M.R. 335 (C.M.A. 1955) (wrongful use of a controlled substance requires knowledge of the substance). Neither of these cases is inconsistent with *Pariso* or has any application to the instant case.

During the providence inquiry, the military judge accurately described the elements of wrongful use of diazepam to Appellant as follows:[5]

> Airman Mull, let's take a look at Specification 4 of Charge III. This also represents a violation of Article 112a of the Uniform Code of Military Justice. The elements of that offense, which is called wrongful use of a controlled substance, are:
>
> That on divers occasions within the continental United States, between on or about 29 August 2014 and on or about 29 April 2015, you used diazepam, a Schedule IV controlled substance;
>
> Two, that you actually knew you used the substance;
>
> Three, that you actually knew that the substance you used was diazepam, a substance of a contraband nature;
>
> Four, that your use was wrongful.
>
> In considering those elements, you should use and understand the following definitions:
>
> "Divers" means on more than one occasion.
>
> "Use" means the administration, ingestion, or physical assimilation of a drug into one's body or system. Use includes such acts as smoking, sniffing, eating, drinking, or injecting.

The military judge then had the following discussion with Appellant:

> MJ: Do you admit that between on or about 29 August 2014 and on or about 29 April 2015, you used diazepam?
>
> ACC: Yes, sir.
>
> MJ: To be punishable under Article 112a, use of a controlled substance must be wrongful. Use of a controlled substance is wrongful if it is without legal justification or authorization. Use of a controlled substance is not wrongful if such act or acts are done pursuant to legitimate law enforcement activities or done

---

[5] *See Military Judges' Benchbook* (*Benchbook*), Dept. of Army Pamphlet 27–9, ¶ 3–37–2 (10 Sep. 2014).

by authorized personnel in the performance of medical duties or experiments.

MJ: Do you admit between on or about 29 August 2014 and on or about 29 April 2015 your use of diazepam was wrongful?

ACC: Yes, sir.

MJ: Okay. So let's narrow that down because as I understand it from our prior discussions that you did have a prescription for diazepam, correct?

ACC: Yes, sir.

MJ: All right. So do you have a prescription in effect between 29 August 2014 and 29 April 2015?

ACC: Yes, sir.

MJ: Okay. So you were using diazepam at least on some occasions legally at that point, correct?

ACC: Yes, sir.

MJ: All right. So what in your mind is the distinction between your wrongful use of diazepam and your lawful use of diazepam?

ACC: At several points over the course of the charged time frame, I was given a prescription for diazepam from my medical provider to help treat pain I experienced due to the herniated disc in my back. During this same time frame, I was also using heroin on a regular basis; and my tolerance from heroin was increasing. To augment the sedative effect of the heroin I was injecting intravenously, I would take diazepam even when I did not have any back pain in an effort to augment my heroin use and also to help control my withdrawals from heroin. I knew that this was wrong because it wasn't the reason I was prescribed diazepam.

. . . .

MJ: All right. What was your prescription? I mean, what did your prescription say? How often should you use it, could you use it?

ACC: It was 5 milligram tablets, sir; and I believe it was as needed.

MJ: Okay, As needed for what?

ACC: For back pain for spasms.

6

MJ: Okay, So it was specifically—your understanding is that it was specifically prescribed for back pain, spasms in the back.

ACC: Yes, sir.

MJ: Okay. So when you used diazepam between 29 August 2014 and 29 April 2015, did you use it for back spasms on at least some occasions?

ACC: Yes, sir.

MJ: Okay. And I think you indicated that on other occasions you took it not in relation to your back pain; is that correct?

ACC: Yes, sir.

MJ: So why do you believe some of your use of diazepam was wrongful?

ACC: Because I would take it even when I wasn't experiencing the back spasms, sir.

MJ: So why did you take it on those occasions?

ACC: To help augment the heroin use.

. . . .

MJ: Okay. So how did it augment your use of the heroin, I guess is what I need to know?

ACC: It would make me feel more relaxed.

MJ: So again, if I'm understanding correctly, so in your mind what makes your use of diazepam wrongful is that you used it for some purpose other than for what it was prescribed for, which was to alleviate back spasms.

ACC: Yes, sir.

. . . .

MJ: At this time, I want you to tell me why you believe you are guilty of the offense listed in Specification 4 of Charge III.

ACC: Because I used my prescribed diazepam for a reason that it was not prescribed for, sir.

In *Pariso*, the appellant there admitted to using a controlled substance (Tylenol III) that was either from one of his old prescriptions or from one of his fiancée's. In either case, he further admitted that by crushing some tablets, mixing them with water, melting the mixture, and injecting the blend into his arm, "he 'definitely wasn't using it in the way it was prescribed,' and he did not have any authorization to use it, nor was he using it for any medi-

cal treatment." 65 M.J. at 723. This court went on to hold that "a service member who knowingly uses a controlled substance without a legitimate medical reason for doing so has wrongfully used the drug."

Appellant here urges us to find that *Pariso* was wrongly decided and, in essence, that we should not have distinguished our earlier decision in *United States v. Lancaster*, 36 M.J. 1115 (A.F.C.M.R. 1993). In *Lancaster* we held that "use [of] a controlled prescription drug for an ailment other than the one for which the drug was prescribed . . . . is not punishable under [Article 112a, UCMJ]." 36 M.J. at 1116. We also concluded that "the military judge erred when he gave instructions which necessarily implied that the use of leftover prescription drugs for a different ailment constitutes wrongful use as a matter of law." *Id.* at 1118.

The stated rationale for our holding in *Lancaster* was that "[w]e have found no specific provision in any statute or punitive regulation prohibiting a person for whom a drug is prescribed from retaining unused amounts of the drug and later taking it for another ailment." *Id.* However, we failed to fully consider the definition of wrongfulness in the *Manual for Courts-Martial, United States* (*MCM*) (1984, incorporating Change 3, 1 Jun. 1987),[6] which states that "use of a controlled substance is wrongful if it is without legal justification or authorization." *Id.*, pt. IV, ¶ 37.c.(5). In other words, use of a controlled substance is wrongful unless it is justified or authorized, for example by a doctor's prescription directing a particular use. Our decision in *Lancaster* rested on the erroneous, contrary presumption that using a prescribed controlled substance for a medical purpose *other than the prescribed one* must also be lawful absent a specific prohibition. *Lancaster's* holding, that the use of a controlled prescription drug for an ailment other than one for which the drug was prescribed cannot be punished under Article 112a, is overruled.

Appellant provided under oath an adequate factual basis for his guilty plea. His admission to using diazepam to augment the sedative effect of the heroin he was wrongfully using and to help control his withdrawals from the heroin adequately established a wrongful use of the diazepam, notwithstanding his prescription for diazepam to help treat his back pain. The military judge fully resolved any apparent inconsistency with his plea raised by the existence of his prescription to use diazepam for legitimate medical purposes. Accordingly, his plea of guilty to wrongful use of diazepam was provident.

---

[6] The *MCM* (2012) was the edition in effect at the time of Appellant's trial. Both it and the current version contain the same definition of wrongfulness. *See MCM* (2016), pt. IV, ¶ 37.c.(5).

**2. Fraudulent Enlistment**

Appellant further asserts that his guilty plea to fraudulent enlistment was improvident because, notwithstanding his admittedly false statements on his *USAF Drug and Alcohol Abuse Certificate* denying any preservice use of marijuana and other illegal drugs and narcotics, his disclosure of a one-time use of marijuana as part of seeking a waiver for his DUI arrest was inconsistent with his plea.

During the providence inquiry, the military judge accurately described the elements of fraudulent enlistment to Appellant as follows:[7]

> So in the Specification of Charge I, you are charged with the offense of fraudulent enlistment, in violation of Article 83 of the Uniform Code of Military Justice. By pleading guilty to this offense, you are admitting that the following elements are true and accurately describe what you did:
>
> One, that between on or about 22 May 2012 and on or about 4 January 2013, within the continental United States, you were enlisted in the United States Air Force as described in the specification;
>
> Two, that you knowingly misrepresented certain material facts about your qualifications, that is, that you had never used or experimented with marijuana and you had never experimented with, used, or possessed any illegal drug or narcotic, when, in fact, you had used marijuana and heroin;
>
> Three, that your enlistment was obtained or procured by the knowingly false representation; and
>
> Four, that under this enlistment you received pay and allowances.
>
> "Enlistment" as used in the specification means a voluntary entry or enrollment for a specific term in one of the Armed Forces by any person except a commissioned or warrant officer.
>
> "Material" means important.
>
> "Receipt of allowances" includes the acceptance of money, food, clothing, shelter, or transportation from the government.

---

[7] *See Benchbook*, ¶ 3–7–1.

The military judge then discussed with Appellant the factual basis for his plea and why Appellant thought he was guilty of fraudulent enlistment. That discussion included:

> ACC: These two individuals sought to obtain information from me about the prior use of illegal drugs including heroin and marijuana.
>
> MJ: Okay. So as part of that process, did you fill out any forms?
>
> ACC: Yes, sir.
>
> MJ: All right. So I see as an attachment to Prosecution Exhibit 1, which is the stipulation of fact, an Air Force Form 2030 has been attached. Do you have a copy of that in front of you?
>
> . . . .
>
> MJ: So when you initialed on the no block for "Have you ever used or experimented with marijuana," was that a true statement?
>
> ACC: No, sir.
>
> MJ: Why not?
>
> ACC: I knew that I was providing false information because I was fully aware that I had previously used marijuana and heroin on multiple occasions but on the AF IMT Form 2030, I initialed next to the boxes where I certified I had not previously used drugs.
>
> MJ: Why did you certify that you hadn't when you had? Why did you certify you hadn't used those drugs, marijuana and heroin, when you had, in fact, used those drugs?
>
> ACC: Because I wanted to join the Air Force, sir.
>
> MJ: Okay. So you were concerned that if you answered truthfully you wouldn't be able to join the Air Force?
>
> ACC: Yes, sir.
>
> MJ: So just to clarify, so at the time you filled out this Form 2030 and you were speaking to these recruiters and they asked you about prior drug use and you indicated that you had no prior drug use with marijuana or any illegal drug or narcotic, did you know you were providing false information?
>
> ACC: Yes, sir.

The military judge accepted Appellant's guilty plea and found him guilty of fraudulent enlistment. However, after reviewing the evidence while deliberating on sentence, the military judge opened the court and discussed with the parties Defense Exhibit N, Appellant's written unsworn statement. In Defense Exhibit N, the military judge noticed a statement that created a potential inconsistency with Appellant's providence inquiry. The military judge reopened the fraudulent enlistment providence inquiry and had a further discussion with Appellant and his counsel that included the following:

> MJ: Take a look at paragraph 7. There's a line in their [sic] saying that—in which the accused states "I did not tell the recruiter about the other drugs I abused before coming into the Air Force and I was not totally forthcoming about the amount of marijuana I smoked." I considered this during the *Care* inquiry when we talked about that. My impression was he didn't—he told the recruiter that he didn't use marijuana at all. Based on the unsworn statement, it appears that may have told the recruiter about some marijuana use. I just want to try and see if I can sort that out.
>
> . . . .
>
> DC: With respect to Airman Mull's drug use before coming onto active duty, Your Honor, he was not forthcoming about his prior marijuana use on the forms that he signed, open and honest about that with those officials about the marijuana. With respect to the heroin, he did not disclose that at all.

The military judge fully discussed the potential inconsistency with Appellant, who asserted that even though he had separately disclosed an isolated use of preservice marijuana, he had knowingly falsified his *USAF Drug and Alcohol Abuse Certificate* regarding all uses of marijuana and heroin, that his purpose in doing so was to enlist in the Air Force, and that his enlistment was obtained or procured by the knowingly false representation. While Appellant could not recall whether his recruiter or anyone else had told him to falsify the *USAF Drug and Alcohol Abuse Certificate*, the military judge advised him that such might be a potential defense to fraudulent enlistment. Nevertheless, Appellant indicated that he wished to forgo an opportunity to put on such a defense and still wanted to plead guilty. The military judge was satisfied that that the apparent inconsistency had been resolved and again accepted Appellant's guilty plea. We are likewise convinced that Appellant made a provident guilty plea to fraudulent enlistment.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court