# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

―――――――――――――

### No. ACM 39207

―――――――――――――

### UNITED STATES
*Appellee*

**v.**

### David G. CHESSER
Captain (O-3), U.S. Air Force, *Appellant*

―――――――――――――

Appeal from the United States Air Force Trial Judiciary

Decided 4 May 2018

―――――――――――――

*Military Judge:* Patricia A. Gruen.

*Approved sentence:* Dismissal and confinement for 13 years. Sentence adjudged 25 August 2016 by GCM convened at Misawa Air Base, Japan, and Hill Air Force Base, Utah.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler USAF; Major G. Matt Osborn USAF; Major Matthew L. Tusing, USAF; Mary Ellen Payne, Esquire.

Before HARDING, BENNETT, and SPERANZA, *Appellate Military Judges.*

Judge BENNETT delivered the opinion of the court, in which Senior Judge HARDING and Judge SPERANZA joined.

―――――――――――――

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

―――――――――――――

BENNETT, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of two specifications of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b, and one specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928.[1] The military judge sentenced him to a dismissal and confinement for 13 years. The convening authority approved the adjudged sentence, but deferred and waived all mandatory forfeitures for the benefit of Appellant's spouse and children.

Appellant contends that (1) his plea to assault consummated by a battery was improvident; (2) his post-trial confinement conditions constituted legal error; and (3) the Addendum to the Staff Judge Advocate's Recommendation (SJAR) was erroneous. With the exception of the words "on the torso with his hands," we find that Appellant's plea to assault consummated by a battery was provident. Furthermore, we find that Appellant's conditions of confinement do not constitute legal error, and any error in the Addendum to the SJAR is minor and did not result in any prejudice to Appellant. We affirm the findings, as modified, and the sentence, as reassessed.[2]

## I. DISCUSSION

### A. Providence of the Plea

Appellant pleaded guilty to, among other things, the specification of Charge II which alleges that he committed assault consummated by a battery upon his wife, RC. The elements of assault consummated by a battery are: (1) That the accused did bodily harm to a certain person; and (2) That the bodily harm was done with unlawful force or violence. Article 128, UCMJ, 10 U.S.C. § 928. The specification of Charge II specifically alleges that Appellant "unlawfully push[ed] [RC] on the torso with his hands."[3]

---

[1] There was no pretrial agreement. Additionally, Appellant pleaded not guilty to, and was acquitted of, rape of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b.

[2] We note that the words "the sentence" before the words "is approved" are missing from the ACTION section of GCMO No. 4, dated 23 December 2016, and the Action of the Convening Authority, also dated 23 December 2016. Therefore, we order a corrected CMO and Action to remedy these erroneous omissions.

[3] Appellant was originally charged with assault consummated by a battery of RC "between on or about 1 October 2012 and on or about 1 March 2013." Before trial, on 1 June 2016, pen-and-ink changes were made to the charge sheet that changed these dates to "between on or about 1 October 2013 and on or about 1 March 2014." At tri-

*(Footnote continues on next page)*

Appellant argues that the military judge erred when she accepted his guilty plea to the specification of Charge II because the military judge failed to elicit, from Appellant, a factual basis sufficient to support her findings of guilt. Appellant does not dispute that he assaulted RC by pushing her. Rather, he avers that he provided the military judge with no factual basis to support her findings that he pushed RC on the torso with his hands.

"We review a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation omitted). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)). "The military judge must question the accused under oath about the offenses to ensure there is an adequate factual basis for a guilty plea." *United States v. Mull*, 76 M.J. 741, 744 (A.F. Ct. Crim. App. 2017) (citing Rule for Courts-Martial (R.C.M.) 910(e)); *see also* Article 45(a), UCMJ, 10 U.S.C. § 845(a). "It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis . . . ." *Id.* (citing *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012)). "However, we look to the entire record to determine whether there is a substantial basis to question the guilty plea." *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002)).

"A plea is provident so long as Appellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Moon*, 73 M.J. at 386 (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)). We "must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (quoting *Hines*, 73 M.J. at 124).

---

al, during the providence inquiry, Appellant insisted that the assault and battery took place after he returned home from Commissioned Officer Training in October 2012. The parties agreed to make another pen-and-ink change back to the original dates.

During Appellant's providence inquiry, the following colloquy took place:

ACC: Ma'am, again, I don't remember the specific argument we had, but we would have arguments where they did escalate, either one of us would try to leave the room. That was very common. This particular incident, we were arguing downstairs. Our unit had two floors. We were at the base of the stairs and we were arguing. I was trying to leave to go upstairs, and I felt that [RC] was in my way trying to not let me leave. And because I was trying to leave, I pushed her with my left arm to move her out of the way so I could go upstairs.

She did not – from what I remember, she did not fall to the ground. I know that I did not put both my hands on her and push her to the ground. But I did push her with my left arm to try to leave, and I do think that that is – it does constitute battery.

MJ: So where did your – did your hands touch her?

ACC: No. No, Ma'am. It was my left forearm.

MJ: Okay. And where on her body did it touch her?

ACC: It would have been on her left shoulder, that area.

MJ: Do you believe that kind of touching is offensive in some way?

ACC: Yes, ma'am.

 . . .

MJ: Okay. So the purpose of touching her in that fashion or pushing her with your arm in that fashion, what was the purpose?

ACC: Ma'am, I was trying to leave, and I don't believe she was wanting me to leave quite yet, and so I really wanted to get out of there, and so I pushed her with my arm so that I could go upstairs.

 . . .

MJ: So you said you pushed her with your arm?

ACC: Uh-huh.

MJ: Is it possible that your hand touched her torso also, your full arm, your hands also? I guess describe that to me. I know you pushed her with your arm. And that could be anything.

That could just be, you know, your elbow, your – this arm, your hand, just kind of a push with just the full arm. And I know that you don't – well, let me ask you this. Do you envision actually palms touching her with your –

ACC: Absolutely no.

MJ: Okay. So you envision using your arm?

ACC: Yes, ma'am.

MJ: Do you believe that that was – well, describe that to me. What part of your arm or how –

ACC: Ma'am the outside of my forearm, pushing her in that regard (indicating).

MJ: Okay. And I'm seeing you push and it looks like that includes your hand, like with the full arm, like you went forward, because you made a movement with your forearm, but then your hand, which is a very natural motion, would have also been part of that movement. Is that accurate?

ACC: Ma'am, I believe when I was trying to push her, I wasn't trying to touch her with my hand. She was facing me in this direction, and I was trying to get by her left side in that way. And so I would have been pushing up against her left arm in that regard. I wasn't trying to touch her with my hand, per se.

MJ: Okay.

ACC: It's possible that it touched, but --

MJ: All right. But you really believe it was mostly your -- your arm was pushing --

ACC: Yes, ma'am.

MJ: -- on her torso?

All right. The force that caused her to move out of the way, do you believe that that was an unlawful amount of force?

ACC: Yes, ma'am, as the elements you described for battery, I believe so,

MJ: All right. Why do you believe that?

ACC: Because of the phrase "however slight."

MJ: Do you believe you had any right to push her like that?

ACC: Ma'am, no.

The UCMJ defines "assault" as

> an attempt or offer with unlawful force or violence to do bodily harm to another, whether or not the attempt or offer is consummated. It must be done without legal justification or excuse and without the lawful consent of the person affected. "Bodily harm" means any offensive touching of another person, however slight.

Article 128(c)(1)(a), UCMJ, 10 U.S.C. § 928(c)(1)(a). "A 'battery' is an assault in which the attempt or offer to do bodily harm is consummated by the infliction of that harm." Article 128(c)(2)(a), UCMJ, 10 U.S.C. § 928(c)(2)(a).

Appellant equivocated, to some extent, during his providence inquiry, but in the end he was fairly certain that he used the outside of his forearm – not his hands – to push RC's shoulder. Appellant, however, was unequivocal when he explained to the military judge that, during a heated argument, he pushed RC so he could move past her and that, in his view, this amounted to an assault consummated by a battery.

We find that the military judge abused her discretion by failing to elicit from Appellant a factual basis to conclude that Appellant "pushed [RC] on the torso with his hands." Nevertheless, we find that the military judge *did* elicit from Appellant a factual basis sufficient to find that Appellant pushed RC, and, therefore, committed an assault consummated by a battery on RC. Accordingly, we find that Appellant's plea to the Specification of Charge II was improvident as to the words "on the torso with his hands." We find that Appellant's plea to the remainder of this specification was provident. We except out the words "on the torso with his hands" from the Specification of Charge II and affirm the specification as modified. In light of this modification, we reassess the approved sentence and affirm it, finding that the modification does not significantly alter the character or nature of the offense to which the Appellant pleaded guilty.

### B. Post-trial conditions of confinement

Appellant was sentenced to confinement for 13 years and a dismissal. He was initially confined, as a "Level 2" inmate, at the Weber County Correctional Facility (WCCF) in Ogden, Utah, for a period of 72 days. On appeal, Appellant argues that the conditions of his post-trial confinement constitute legal error, and he asks for two for one credit for the time he spent at the WCCF.

Appellant makes the following claims in support of his argument: (1) he made timely complaints about the conditions of his confinement through his defense counsel and in clemency; (2) invoking the Eighth Amendment[4] and Article 55, UCMJ, 10 U.S.C. § 855, Appellant avers that his treatment at the WCCF was cruel and unusual; (3) citing Article 58, UCMJ, 10 U.S.C. § 858, he claims to have received disparate treatment compared to other inmates at the WCCF; and (4) assuming all the above fails, he is still entitled to sentencing relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c). We disagree.

"No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." Article 12, UCMJ, 10 U.S.C. § 812. Article 12 applies to military members held in civilian state or federal confinement facilities in the United States. *United States v. McPherson*, 73 M.J. 393, 394 (C.A.A.F. 2014).

Article 58(a), UCMJ, 10 U.S.C. § 858(a), provides that military members serving a sentence to confinement may be confined in a civilian facility, but persons so confined "are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution was situated." 10 U.S.C. § 858(a). "Military confinees can -- and must -- receive treatment equal to civilians confined in the same institution, while being confined separately from foreign nationals." *McPherson*, 73 M.J. at 396.

Air Force Instruction (AFI) 31-105, *Air Force Corrections System*, ¶ 5.2.4.1 (15 Jun. 2015), referencing Article 12, provides:

> When housing off-base, ensure to the maximum extent possible that the military confinee is separated from illegal aliens/foreign nationals (reference Art. 12, UCMJ) and not comingled with civilians (or other military) with the opposite pre- or post-trial status . . . .

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (citing *United States v. Avila*, 53

---

[4] U.S. CONST. amend. VIII.

M.J. 99, 101 (C.A.A.F. 2000)). To establish that there was a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [appellant's] health and safety; and (3) that [appellant] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ.

*Id.* (alteration in original) *(*quoting *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006)).

"A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and the right to petition for relief under Article 138, UCMJ, 10 U.S.C. § 938. *Id.* at 471.

In his declaration, Appellant describes his chief complaints as follows: (1) he was confined to the WCCF longer than he expected to be;[5] (2) he was not given enough personal hygiene items or any dental floss; (3) he was not treated like other similarly situated inmates (e.g., he was not permitted to socialize with other inmates or attend religious services with them, and he was never asked if he wanted to go outside); (4) he was not given enough food and had to purchase food from the prison commissary; and (5) during the week of 23 to 29 September 2016 he was not permitted to leave his cell.[6]

In response to Appellant's declaration, the Government provided a declaration from Deputy Sheriff's Lieutenant (Lt.) JM, a WCCF Opera-

---

[5] That Appellant spent more time at the WCCF than he expected or preferred is immaterial to our analysis of this issue. He is not entitled to confinement at the facility of his choice.

[6] Appellant's Assignment of Errors could be clearer with respect to which days he alleges he was not allowed out of his cell. Appellant's declaration attests to his being locked in his cell from 23 to 29 September 2016. However, some of Appellant's clemency submissions as well as his Assignment of Errors seem to make mention of another period of time, between 5 and 9 September 2016, when he was allegedly locked in his cell. WCCF records show that during both periods Appellant was allowed to, and did, leave his cell.

tions/Housing Bureau Commander, and Staff Sergeant (SSgt) MH, the NCOIC of confinement for the 75th Security Forces Squadron (SFS), Hill Air Force Base, Utah.[7]

Appellant was provided hygiene items when he arrived at the WCCF and was issued more hygiene items when he asked for them.[8] He concedes as much in his declaration. Furthermore, he knew he could purchase additional hygiene items and did so. WCCF records show that on three occasions Appellant purchased hygiene items from the prison commissary.

In accordance with Article 12, UCMJ, AFI 31-105, and the Memorandum of Agreement (MOA) existing between the WCCF and the 75th SFS, Appellant was kept separate from other inmates who were not members of the military classified as Level 2 inmates. When Appellant was confined at the WCCF, there were no such inmates. Thus he had no interaction with other inmates. This policy exists to protect military members who are prisoners in civilian confinement facilities.[9]

Appellant agrees that he was permitted to have recreation time at the same rate as the other inmates in his custody class even though he was not permitted to interact with them.[10] While the WCCF has an outdoor recreation yard, WCCF records show that Appellant never asked to use this recreation area. Had he asked, he would have been permitted to use it.

Appellant alleges that he was left in his cell for six straight days from 23 to 29 September 2016. However, WCCF records show that he was allowed to leave his cell four times during this period, and that he asked to return to his

---

[7] Having considered the entire record of Appellant's trial, and applying the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), we find we can resolve the issues raised by Appellant without additional fact-finding.

[8] The WCCF inmate handbook explained the facility's policy concerning hygiene items, that these items could be purchased, and that these items would be provided if a prisoner was indigent. Indigent prisoners, upon request, were provided postcards to write on, Ibuprofen, facial and body soap, deodorant, fluoride toothpaste, and shampoo. According to SSgt MH, Appellant received the handbook. Appellant demonstrated that he knew he could ask for hygiene items and purchase them. According to Lt. JM, dental floss is one item that is not available to inmates at the WCCF because it poses a threat to the custody environment.

[9] In his clemency submission, Appellant acknowledged that the policies which kept him separate from other inmates existed for his protection.

[10] Inmates in Appellant's custody class received 1 hour of recreation time for every 48 hours that they spent in their cells.

cell before his allotted two hours had expired on more than one occasion. Records also show that Appellant received 12 "visits" via video teleconference and purchased 19 pre-stamped post cards to correspond with others.

Appellant claims that he was not permitted to regularly attend church services like the other inmates. However, at the WCCF, conventional church services were not provided for Level 2 inmates, like Appellant. Rather, these inmates could request individual clergy visits. According to WCCF records, Appellant made requests for clergy on 10 and 27 October 2016. Appellant received a clergy visit on 25 October 2016, and was thereafter placed on the waiting list for clergy visits. Appellant had access to religious material, such as the Holy Bible and the Book of Mormon.[11]

According to Lt. JM, like every other inmate at the WCCF, Appellant received breakfast, lunch, and dinner. Menus at the WCCF were selected by a dietician to meet or exceed 2600 calories per day. Appellant was adequately fed by the WCCF, and had the option of purchasing additional food, which he did. WCCF records show that on 153 occasions he purchased snacks such as chips, cookies, and donuts at a total cost of $216.79.

None of the Appellant's claims demonstrate "an objectively, sufficiently serious act or omission resulting in the denial of [Appellant's] necessities." *Lovett*, 63 M.J. at 215. Nor has there been any showing of a deliberate indifference to Appellant's health and safety. *Id*. While his confinement was undoubtedly unpleasant, a characteristic commonly associated with post-trial confinement, Appellant was adequately cared for by the prison staff who were following the appropriate WCCF and Air Force policies. Moreover, the Government's affidavits demonstrate that, while Appellant was kept separate and apart from the other inmates at the WCCF, he was treated like every other Level 2 inmate.

When Appellant complained about his conditions of confinement to Air Force Security Forces personnel and his defense counsel, they quickly responded. Appellant admits that he was instructed on the use of handheld tablets to make special requests or file complaints.[12] In fact, he used this method

---

[11] Appellant is a member of the Church of Latter Day Saints.

[12] According to Lt. JM, prisoners had access to both the electronic handheld tablets, which they could take to their cells, and kiosks. Both the tablets and kiosks contained copies of the WCCF inmate handbook. This handbook provided general guidance on matters such as prisoner responsibilities and use of WCCF services, like the commissary. WCCF records show that Appellant made eight electronic requests for

*(Footnote continues on next page)*

to ask permission to attend church services and receive other services. However, despite being instructed on the process for filing a complaint, Appellant never availed himself of the WCCF prisoner grievance process. He claims that he felt uncomfortable doing so after being yelled at by WCCF prison guards, and believed he was best served by complaining to Air Force Security Forces personnel. Appellant also never filed an Article 138 complaint alleging that his conditions of confinement were cruel and unusual or in any way objectionable.

There were no unusual or egregious circumstances that prevented Appellant from exhausting these remedies. *Wise*, 64 M.J. at 471. Appellant is well-educated (a dentist) and a captain in the United States Air Force. At the time of his confinement, he had already fully participated in his own defense at his court-martial, and he still had the assistance of counsel, both military and civilian. Appellant also had access to clergy (albeit not as often as he would have liked), Air Force Security Forces Personnel, and members of his family. He was not a fresh recruit, naïve and isolated. On the contrary, he was relatively sophisticated and experienced enough to know he had the means to address his grievances. Appellant made a conscious choice to forgo any formal complaints, asserting that he would have if Air Force SFS personnel had not intervened to remedy his concerns.

To demonstrate the exhaustion of administrative remedies, an appellant must show that he attempted, unsuccessfully, to use both the prisoner grievance and Article 138 processes to address his or her concerns. *Wise*, 64 M.J. at 471. The requirement to exhaust administrative remedies "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* (alterations in original) (citing *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). While appellant may have complained to his defense counsel and Air Force SFS personnel, this did not amount to the exhaustion of his administrative remedies. Under our framework for the analysis of this issue, Appellant was required to exhaust his administrative remedies, and he did not do that.

"[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). Appellant's com-

---

inmate services while he was confined at the WCCF; all these requests were answered on the day they were submitted.

plaints, even if true, do not rise to this level. For this and all the other reasons already discussed, we find no violation of the Eighth Amendment or Articles 12, 55, or 58, and we decline to grant relief.

Appellant asks us to consider sentence relief under Article 66(c), UCMJ. Under Article 66(c), we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact, and we could grant sentence relief even without finding an Eighth Amendment, Article 55, or Article 58 violation. *Gay*, 74 M.J. at 742–43; *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). However, after considering all the facts and circumstances, we find that Appellant's conditions of confinement at the WCCF were not poor; these conditions were appropriately tailored based on Air Force and WCCF policies; these policies exist to ensure the safety of military inmates confined in civilian facilities; both the WCCF staff and Air Force Security Forces personnel were responsive to Appellant's complaints and took measures to remedy them when they could. Therefore, we find Appellant is not entitled to sentence relief under Article 66(c).

## C. Addendum to the SJAR

In his Addendum to the SJAR, the Acting Staff Judge Advocate (ASJA) made the following remark concerning Appellant's clemency submission:

> The defense alleges one legal error: that [Appellant's] post-trial confinement conditions while in solitary confinement in the [WCCF], awaiting transfer to a military corrections facility, was [sic] overly harsh. I have reviewed this allegation and find it to be without merit, particularly as some of the clemency letters submitted by [Appellant] indicate that he had adapted well to conditions, was allowed videophone visitation, and had regular contact with at least one other inmate.

Appellant argues that the Addendum to the SJAR contained error that materially prejudiced him in three ways: (1) the ASJA incorrectly commented that Appellant's complaints about his conditions of confinement, made in his clemency request, were without merit; (2) the ASJA's advice was misleading because it incorrectly referred to letters that discussed Appellant's ability to adapt to his confinement as evidence that his conditions of confinement were legal; and (3) the ASJA's use of the word "letters" instead of the word "letter" was misleading because there was only one letter (i.e., the one submitted by Appellant's uncle) that addressed his ability to adapt to confinement.

We review de novo alleged errors in post-trial processing. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000); *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004). The threshold for establishing prejudice in post-trial processing is low, but an appellant must make at least

"some colorable showing of possible prejudice." *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65). Generally, when considering whether an appellant has been prejudiced by an error in the SJAR or an Addendum to an SJAR, we must determine whether the convening authority "plausibly may have taken action more favorable to" the appellant if the convening authority had received the correct advice or information. *United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988), *aff'd*, 28 M.J. 452 (C.M.A. 1989); *see also United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). Any error in the Addendum was minor and, having reviewed the record in this case, we find Appellant has not met his burden of establishing prejudice.

It was not error for the ASJA to characterize Appellant's claims concerning his conditions of confinement as an allegation of legal error; nor was it error for the ASJA to disagree with Appellant and refer to his allegation of legal error as being "without merit." Whether Appellant's conditions of confinement violated the Eighth Amendment or Article 55, UCMJ, is a legal question; if there was a violation, it would be considered a legal error.[13]

Furthermore, R.C.M. 1106(d)(4) provides:

> The staff judge advocate or legal officer is not required to examine the record for legal errors. However . . . the staff judge advocate shall state whether, *in the staff judge advocate's opinion*, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate. *The response may consist of a statement of agreement or disagreement with the matter raised by the accused.* An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required.

(Emphasis added). When the ASJA provided his opinion on Appellant's assertion of legal error in his Addendum to the SJAR, he was merely complying with R.C.M. 1106(d)(4).

Appellant's uncle, DI, submitted a clemency statement on Appellant's behalf in which DI mentioned that he and his wife were able to meet with Appellant, by videophone, once or twice a week while Appellant was an inmate at the WCCF. DI also stated,

---

[13] Appellant framed the issue of whether his conditions of confinement violated the Eighth Amendment or Article 55, UCMJ, as a question of legal error on appeal.

> The thing that might surprise you most is to see how [Appellant] has been able to adapt to his condition. He told me last week that he was quite comfortable in his routine. He has become fastidious at keeping his cell clean. He has in the past weeks managed to read the entire Old Testament, which we discuss at length. He sings religious hymns much of the day. During the two hours he is released (once every 48 hours), he quickly showers and then spends time proselytizing to one of the other inmates. I am amazed at his positive attitude.

Appellant, in his own clemency statement, complained of, among other things, being locked in solitary confinement, having no interpersonal contact with other inmates, not being allowed to practice religion, and being unable to use the phone. The observations that DI made in his clemency submission directly contradict these claims, and it was reasonable for the ASJA to use this information to rebut Appellant's clemency request. The ASJA accurately captured DI's observations and expressed them in a non-misleading way. Therefore, the ASJA did not err when he referred to DI's observations in the Addendum to the SJAR.

We agree that DI's clemency submission is the only clemency submission that could have been used by the ASJA to rebut Appellant's claims concerning his confinement. Thus, it was error for the ASJA to state that "some of the clemency letters submitted by [Appellant] indicate that he had adapted well . . . ." There was only one such letter. However, this was a minor error, and we find that Appellant has made no "colorable showing of possible prejudice." *Scalo*, 60 M.J. at 436–37. Appellant pleaded guilty to twice sexually abusing his then six-year-old daughter as well as assaulting and battering his wife. The sentence he received was well under the maximum for these offenses. Under these circumstances, in our view, Appellant has not demonstrated that it is plausible that the convening authority might have taken favorable action if he knew there was only one clemency submission attesting to Appellant's resiliency instead of multiple submissions. *Johnson*, 26 M.J. at 689.

Therefore, we decline to grant any relief.

## II. Conclusion

Accordingly, the approved findings, as modified, and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings, as modified, and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court