# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40354**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Leo J. NAVARRO AGUIRRE**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 March 2024

————————————

*Military Judge*: Elijah F. Brown.

*Sentence*: Sentence adjudged 26 March 2022 by GCM convened at Joint Base Lewis-McChord, Washington. Sentence entered by military judge on 12 May 2022: Bad-conduct discharge, confinement for 2 years and 2 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant*: Major Spencer R. Nelson, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Major Vanessa N. Bairos, USAF; Major Olivia B. Hoff, USAF; and Mary Ellen Payne, Esquire.

Before RICHARDSON, DOUGLAS, and WARREN, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge WARREN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

DOUGLAS, Judge:

In a general court-martial, Appellant entered mixed pleas. The trial judge accepted his pleas of guilty to one specification of failure to obey a lawful order (violating a no-contact order), and one specification of wrongful use of oxycodone in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a.[1] The trial judge also accepted Appellant's plea of guilty by exception to one specification of reckless driving, excepting the words "and aerosol inhalants," in violation of Article 113, UCMJ, 10 U.S.C. § 913.[2] The Government elected to go forward with the excepted language in which a panel of officer and enlisted members found Appellant guilty of the specification of reckless driving, excepting the words "and aerosol inhalants." Contrary to the remainder of his pleas, the same panel of officer and enlisted members found Appellant guilty of one specification of wrongful use of Ambien[3] in violation of Article 112a, UCMJ, and one specification of assault consummated by a battery and one specification of aggravated assault—both against his spouse and both in violation of Article 128, UCMJ, 10 U.S.C. § 928.[4] The trial judge sentenced Appellant to a bad-conduct discharge, confinement for two years and two months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.[5] The convening authority took no action on the findings. The convening authority suspended the first six months of the adjudged forfeiture of total pay and allowances, waived the resulting automatic forfeitures for six months, and directed the total pay and allowances to be paid to Appellant's spouse for six months. Otherwise, the convening authority

---

[1] Unless otherwise indicated, all references to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Specifically, Appellant was charged with "physical[ ] control of a vehicle, to wit: a passenger car, in a reckless manner by causing the vehicle to block traffic and swerve on public roadways and by driving the vehicle after using Zolpidem (a Schedule IV controlled substance commonly referred to as Ambien) and aerosol inhalants."

[3] Charged as "Zolpidem, commonly referred to as Ambien, a Schedule IV controlled substance."

[4] The convening authority withdrew and dismissed without prejudice one specification of wrongful use of benzodiazepine, a Schedule IV controlled substance, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Appellant was acquitted of several other specifications and charges.

[5] The concurrent and consecutive segmented confinement lengths combined for a total of two years and two months. Appellant was credited with 108 days of pretrial confinement.

approved the remainder of the sentence and provided the language for the reprimand.

Appellant raises three issues on appeal which we have reordered and reworded: whether (1) Appellant's guilty plea for reckless driving was provident, (2) Appellant's conviction for wrongful use of Ambien is legally and factually sufficient, and (3) Appellant was entitled to a unanimous verdict. We have carefully considered issue (3) and determined it warrants no discussion or relief. *See United States v. Guinn,* 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)). Key to the analysis of the claims on appeal is the distinction between what Appellant stated in his initial *Care*[6] inquiry and the re-opened *Care* inquiry—the details of which were not before the factfinders—versus the information admitted as evidence before them. After considering the entire record and finding no error materially prejudicial to Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

While addressed separately at trial, the facts of the reckless driving and wrongful use of Ambien convictions are related. Both involve a single use of Ambien, which was a contributing factor to Appellant's reckless driving and separately charged as a wrongful use of a controlled substance. The specification alleging reckless driving charged, *inter alia*, that Appellant drove "within the state of Washington, on or about 1 October 2021 . . . in a reckless manner . . . after using" Ambien. The specification alleging wrongful use charged that Appellant "did, in or around the state of Washington, on or about 1 October 2021, wrongfully use" Ambien.

Without a plea agreement, Appellant pleaded guilty to reckless driving (except the words "and aerosol inhalants"), admitting he was under the effects of his prescribed Ambien, but he pleaded not guilty to wrongfully using this prescription medication. Appellant elected to inform the panel of his guilty pleas prior to the Government proceeding on the merits; consequently, the members knew Appellant had pleaded guilty to reckless driving after using Ambien. However, the members did not know the underlying facts of the guilty plea because the details of his plea were not introduced as evidence before the factfinders. The Government proceeded on the excepted words of the reckless driving offense, as well as all charges to which Appellant had pleaded not guilty, including wrongful use of Ambien.

---

[6] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

In closing, trial defense counsel argued that Appellant's Ambien use was in accordance with his prescription, which was admitted into evidence. On appeal, Appellant's counsel continues to argue the same.

As background for purposes of our opinion, the undisputed facts common to both offenses are that sometime after work on Friday, 1 October 2021, Appellant took Ambien, which he had been prescribed the previous day, and then drove his personal vehicle.

## A. Not Admitted as Evidence: First Providency Inquiry

After pleading guilty and being placed under oath, Appellant explained the following to the trial judge during the *Care* inquiry:

> On 1 October 2021, within the State of Washington, I drove my passenger car in a reckless manner after using Ambien. I was prescribed Ambien the day before on 30 September 2021. I got the prescription to help me sleep. On 1 October 2021, I took the prescribed dose of one pill. On 1 October 2021, I left work at Joint Base Lewis-McChord and went to my apartment in University Place, Washington. I got back around 1430, and I decided to take some Ambien and go to sleep, because I hadn't slept in almost two days. Earlier in the day I had been thinking that I needed to fill my car with gas. After a little while, I fell asleep in bed in my apartment. The next thing I remember is being behind the wheel of my car. My car was parked in the parking lot outside of my apartment. I remember noticing that I was in the wrong parking spot, the vehicle was running, and I had the foot on the gas pedal revving the engine, which caused the vehicle to overheat. A police car was behind me. The police officers talked with me. There were two officers there. They asked me if I was drunk and I told them no, but I said that I had taken Ambien. . . . I do not remember driving my car, but I have reviewed the statements of witnesses and police, and I am aware that my car was seen recklessly weaving and blocking traffic. I was discovered in my car with the car still running. When I woke up, the car was in a different spot than where I had left when I got home from work. I was the only one who had keys to my car. The police told me a witness saw me hit a lamppost, and when I looked at my car, I noticed fresh damage to the front bumper of my vehicle that had not been there when I parked it. I believe that I did, in fact, drive my car in a reckless manner as the evidence I have reviewed says.

Following this explanation, the trial judge questioned Appellant. During that question-and-answer colloquy, Appellant re-affirmed to the trial judge the substance of Appellant's opening explanation, to wit: that Appellant operated his vehicle within hours of taking Ambien; that he had no independent recollection of his reckless operation of the vehicle (including swerving in traffic and hitting a lamppost), but that his review of the evidence gathered in the case, including the police report containing police and witness statements, convinced Appellant that he did in fact operate his vehicle recklessly as alleged. Appellant further conceded under oath that he felt "dazed, groggy, and slow" when police confronted Appellant in his apartment complex parking lot. The question-and-answer colloquy continued:

> [Military Judge (MJ)]: The next part of the element [of physically controlling a vehicle] says that you caused the vehicle to swerve on public roadways. What do you know about, if anything, about swerving on public roadways?
>
> [Appellant]: I believe it's unsafe, Your Honor.
>
> MJ: And factually, what information do you have from your review of any of the witness statements or from what the police may have told you about any sort of swerving? Like what do you know or what do you believe you did based on that?
>
> . . . .
>
> [Appellant]: Your Honor, one witness stated that I was swerving on and off roads, switching lanes, and that the swerving is what eventually led me to swerve onto the sidewalk and hit the lamppost, Your Honor.
>
> . . . .
>
> MJ: The element continues by saying that this control of the vehicle was after using Zolpidem, a Schedule IV controlled substance commonly referred to as Ambien. Was this after using Ambien?
>
> . . . .
>
> . . . What I am trying to determine is just temporally, like how long after using the Ambien could it have been when you were driving? And I understand you might not have any sort of specific timeline, but why do you think you were controlling your vehicle after -- well, in a reckless manner part of which was after using Ambien? And it looks like your counsel is ready to speak with you.

. . . .

[Appellant]: Your Honor, I believe it was after arriving home from work that day. I was still in the same clothes that I had been wearing at work minus the blouse. There was still light out and it was the same date. And when I woke up, I had the same clothes on.

MJ: Do you believe it was the Ambien that led to your not having a memory of being in control of the vehicle?

[Appellant]: Yes, Your Honor.

. . . .

MJ: So the second element is that, you know, by causing the vehicle to block traffic, swerving on public roadways, and then by driving the vehicle after using Zolpidem, you controlled the vehicle in a reckless manner. So why do you believe this was reckless? That your control of the vehicle, rather, was reckless?

[Appellant]: Because I was not in complete control of my faculties, Your Honor.

. . . .

Your Honor, it was reckless because I was swerving on the road, blocking traffic, riding up a sidewalk and hitting the lamppost, and that is unsafe for myself and others.

MJ: So the definition -- the legal definition of reckless is that the manner of control of the vehicle was under all the circumstances of such a heedless nature that it made it actually or imminently dangerous to the occupant, so to you, or to the rights or safety of others or another. It further says that recklessness is not determined solely by reason of the happening of an injury or invading the rights of another nor solely by excessive speed or erratic operation, but these are relevant factors. So, how was it imminently -- actually imminently dangerous to yourself or to the rights or safety of others, would you say?

[Appellant]: I could have gotten into a car accident, Your Honor. Well, besides hitting the lamppost, hurting others and myself, Your Honor.

MJ: Do you think lack of memory as a result of taking Ambien, do you think the Ambien could have also impacted your ability to safely control the vehicle?

[Appellant]: Yes, Your Honor.

. . . .

Your Honor --

. . . .

-- in addition to when my memory came to, I remember feeling dazed, groggy, slow, and having a hard time understanding the police officers. I thought the same way I was driving that night, I could see how it could affect my ability to safely drive.

MJ: Do you believe that to be the case, that you would have been experiencing affects such as being dazed, groggy and slow while driving?

[Appellant]: Potentially, Your Honor.

MJ: Do you think you had any legal justification or excuse for operating the vehicle in the manner alleged while under -- or after taking Ambien?

[Appellant]: No, Your Honor.

Counsel for both sides responded in the negative when asked by the trial judge if they believed further inquiry was required. The trial judge found Appellant's pleas provident, accepted the pleas, and advised Appellant that he may "request to withdraw" the "guilty plea[s] at any time before sentence is announced," and the request would be granted if there was "a good reason" for the request.

## B. Admitted as Evidence: Before the Court Members

After the members were impaneled, the Government presented evidence on the offenses to which Appellant pleaded not guilty. Specific to reckless driving, including the words "and aerosol inhalants," the Government called Specialist (SPC) MD. On the day in question, SPC MD was driving behind his wife, who was driving her own vehicle, and they were headed home in the same direction as Appellant. SPC MD testified that at about 1800 hours on 1 October 2021, he saw Appellant in his vehicle at a traffic light that turned green, but Appellant did not move his vehicle. As a result, "everybody started honking . . . because . . . everybody gets aggravated." He then witnessed Appellant "swerving in and out of lanes" and "slow down, speed up, slow down, and speed up again," and SPC MD thought Appellant might be trying to race with him. At one point, while SPC MD and his wife were both traveling in the left lane of two lanes, SPC MD noticed Appellant attempted to pass his wife, on the left—crossing the center line and into a lane with oncoming vehicles. At that time, Appellant returned to the right lane and sped away. When SPC MD arrived at his apartment complex, which coincidentally was the same as Appellant's, he

saw Appellant's vehicle stopped in the turning lane, not moving. At that time, SPC MD got out of his vehicle to check on Appellant. SPC MD saw Appellant in military uniform "without the top, just a shirt," "rocking back and forth," with "a can in his lap, and [Appellant] just had like a smile"—causing SPC MD to think "okay, well, he's probably high." SPC MD thought he might help by driving Appellant's vehicle, but Appellant did not roll down his window. Appellant eventually turned into the apartment complex, but then "bumped into a lamppost," causing Appellant to stop again for "like, five, ten minutes" before driving off. SPC MD did not see Appellant again.

Continuing its case-in-chief, the Government called Deputy MC, who was one of two responding local, civilian police officers. They had responded to a report of a traffic complaint with suspicions that the driver was "driving under the influence." According to Deputy MC, "a vehicle was traveling . . . driving into oncoming traffic and possibly causing an accident," and the complainant stated, "they had believed the vehicle had struck a pole, and the vehicle had left." The police officers determined the residential address from the license plate information provided by the complainant, but "could not find any damage to the pole," so they proceeded to the residential address of the license plate registration. Deputy MC "saw a vehicle that was parked in a parking stall but was not completely in the stall. It was like halfway out." Appellant was in the car at the time, and the officers "made contact." Appellant stated that "his vehicle was now broken down" and he "could not get it into the stall completely." Deputy MC continued,

> I went through [a] series of questions. Explained what had occurred. What the report was. My partner and I, you know, established a rapport, and then the conversation led to alcohol, drugs. At the conclusion what we ended up finding out is the Airman spoke about how he had been on Ambien, had been taking Ambien. I assisted to try to get the vehicle into the driveway. There was some type of damage on the undercarriage or whatever. We could not get it to function at all, and we could not move it back into the parking stall.

According to Deputy MC, they did not have probable cause to arrest Appellant, so he "made notification to [Appellant's] supervisor in the military and [Appellant] was sent on his way back to his residence." Deputy MC further described Appellant as "cooperative," "responsive," "calm," and "forthcoming." Deputy MC recalled Appellant was "in uniform" and agreed he was "ambulatory." Standardized field sobriety tests were not given because Deputy MC did not see any indications that would lead him or the other responding officer to believe they were necessary.

The Government also called Airman First Class (A1C) ASM, a paralegal assigned to the legal office responsible for prosecuting the Government's case. On 15 December 2021, approximately 75 days after Appellant was seen driving recklessly, A1C ASM went to the last known address for Appellant, found Appellant's vehicle, and took photographs. Nine photographs were admitted as Prosecution Exhibit 5. They included pictures of the outside of Appellant's vehicle, as well as the inside of his vehicle. From the outside of his vehicle, through the windows, a written prescription for Ambien was visible; the pharmacy Appellant used was Walgreens. She agreed that at the time she took the photographs, Appellant's vehicle was "fully parked in the parking spot."

Further, the Government called Dr. CS, a forensic director for a regional clinical laboratory in Philadelphia, and qualified him as an expert in forensic toxicology and criminalistics. Through their cross-examination, the Defense asked a series of questions related to Ambien use and its effects on a person, eliciting concessions as to the amnesiac side effects of Ambien (*i.e.*, that after taking Ambien a person could be capable of performing complex tasks and yet not remember them).

Upon redirect examination, the Prosecution elicited testimony as to the duration of the physiological effects of Ambien on the central nervous system, including that Ambien is a "full night's rest kind of medication" designed to induce extended periods of sleep for the user.

The Government also called Master Sergeant (MSgt) EP, Appellant's first sergeant. MSgt EP explained that Appellant worked a standard day shift on 1 October 2021—that generally, he worked from approximately 0630 until 1630. MSgt EP confirmed Appellant worked on 1 October 2021.

After the Government rested, the Defense called Dr. BW, the psychiatric nurse practitioner who prescribed Appellant Ambien. Through her testimony, the Defense admitted Defense Exhibit B, a two-page document that reflected the prescription she wrote Appellant on 30 September 2021. She agreed that as of 1 October 2021, Appellant had an active prescription for Ambien, and would have had a medical purpose and authorization to use the medicine on that day. The Defense also admitted Defense Exhibit A, a 26-page document produced by the Food and Drug Administration (FDA) to inform providers of the risks and benefits of Ambien. On the front page, highlighted by a box outline, was an advisory that indicated a warning for "complex sleep behavior." Further, in the FDA advisory, one of the complex sleep behaviors listed was "sleep-driving." Trial defense counsel questioned Dr. BW about the advisory:

> Q: All right. So[,] in the upper left-hand page -- I am sorry, the upper left-hand quadrant of the first page, it talks about complex sleep behaviors. Let's talk about complex sleep behaviors. And

> as the person providing the medication, what does the term complex sleep behavior mean to you as it relates to Ambien?
>
> A: Well, in addition to, you know, providing -- since Ambien is a hypnotic in addition to providing sleep, it can also have other sorts of side effects that can occur when a person is going to sleep or when a person is using the medication. Sometimes the complex -- well, the complex sleep issues can be like a parasomnia, which is sort of an unusual reaction to the medication, which has a whole list of different things that people could experience potentially. Not commonly, but potentially.

During cross-examination of Dr. BW, trial government counsel extracted concessions on normal patterns of prescribed Ambien use, including the fact that the normal prescription instructions include a directive for the patient to take the medication "typically" 30 minutes prior to his intended bedtime and seven to eight hours before he intends to wake up. She did not state whether she recalled informing Appellant of this specific set of instructions.

When trial defense counsel additionally asked, "[i]f a particular person who has been prescribed Ambien takes it, say, an hour before going to bed, does that somehow invalidate the prescription, make their use illegal," Dr. BW responded, "No." Dr. BW answered the same when asked about two hours.

When asked by trial government counsel if people abuse Ambien prescriptions, Dr. BW responded, "Some people do. People have." Dr. BW provided the following in response to follow-on questions by trial counsel:

> Q: And could they do that by taking more than they should take?
>
> A: They could do that.
>
> Q: And could they do that by taking that at a time when they are not trying to go to sleep, but rather trying to have some other effect?
>
> A: I mean, I have not seen that commonly, but I imagine that, yes, you could do that.

The Defense moved for a finding of not guilty under Rule for Courts-Martial (R.C.M.) 917, claiming the Government had failed to establish Appellant wrongfully used his Ambien prescription on 1 October 2021. While the Government disputed the motion, they admitted their case was based upon circumstantial evidence, rather than direct evidence. The trial judge denied the motion, finding the evidentiary standard had been met through the Government's admission of "some evidence," and cited this court's opinion in *United States v. Mull*, 76 M.J. 741, 746 (A.F. Ct. Crim. App. 2017) (en banc) (overruling a previous holding "that the use of a controlled prescription drug for an ailment

10

other than the one for which the drug was prescribed cannot be punished under Article 112a, [UCMJ]").

In closing argument, trial government counsel theorized Appellant misused his Ambien prescription for its mood-altering effects when he stopped at Walgreens and took the medicine in his car after leaving work but before arriving home. Conversely, the Defense argued Appellant had a prescription for Ambien which he used in accordance with its intended purpose, but the medication caused him to be sleepy while driving. They specifically argued Ambien did not cause him to be "passed out" while driving. According to the Defense, Appellant driving recklessly and while sleepy did not equate to misusing the prescription and the Government had "no proof" that Appellant took the Ambien for any other reason than to "go to sleep."

The members found Appellant guilty of reckless driving, except the words "and aerosol inhalants," as well as guilty of wrongful use of Ambien. After findings were announced, Appellant chose sentencing by the trial judge alone. The panel members were then permanently excused.

## C. Not Admitted as Evidence: Second Providency Inquiry

At the beginning of the sentencing phase of the trial, the Defense moved for a finding of not guilty under R.C.M. 917 for a second time, claiming the Government had failed to prove Appellant wrongfully used his prescription Ambien on 1 October 2021. Further, the Defense argued the trial judge should consider the facts as explained by Appellant during his *Care* inquiry; specifically, that he took the Ambien after getting home because he "wanted a nap" and then "woke up in his car hours later." The trial judge denied the motion again, specifying he did not consider the *Care* inquiry. However, because of trial defense counsel's argument on this motion, and after an additional review of Defense Exhibit A (the FDA advisory), the trial judge reopened Appellant's *Care* inquiry as to the reckless driving. The trial judge was concerned that trial defense counsel had raised the legal defense of an involuntary act, or "automatism." He explained that while there was no requirement to remember criminal conduct to plead guilty to it, the criminal act must have been voluntary. The following exchange occurred between the trial judge and Appellant during the re-opened *Care* inquiry:

> MJ: . . . [O]ne thing I want to ask you about is, essentially, why you believe you are guilty of [the reckless driving] charge. Again, excepting the words "and aerosol inhalants," and essentially, it's the part of that charge that says you were in physical control of the vehicle. So I'll inform you that voluntary intoxication, so if you voluntarily take, whether it's alcohol or a drug, if you take a drug voluntarily is not a defense. That's just what the law is.

And the law also recognizes that just because you don't remember something, doesn't mean that you can't plead guilty to doing something, provided you can articulate or explain why you think you are guilty.

. . . .

Why do you think that your control of the vehicle was voluntary if you were under the influence of Ambien and have no memory of the driving?

[Appellant]: Your Honor, before my memory blacks out, I was laying in bed in my apartment with my shoes off and my blouse off. To get to the point where I was at, I would have had to put some kind of shoes on, get my car keys, get in my car, start my car, turn music on, because there was music playing, which doesn't automatically start, at least not from my phone. From witness testimony, I stopped at stoplights, right, I had to put my car in gear and pulled out of the spot. The car was also parked differently than how I left it when I got home from work. When I get home from work I usually pull in reverse to my parking spot. And when I come to with the conversation with the police officers, my car is just pulled in forward. Again, from witness testimony, I was driving somewhat normal at some points. Also, my feeling of when my memory kicks back in, it does [sic] didn't feel like waking up from sleep. It feels more like I just wasn't storing what was going on. Kind of feels like a blackout from drinking alcohol. Like a slide show and there are just some slides missing. Also, previously I was aware that Ambien was pretty potent stuff, and I know it made sleeping [—] could have effects on your driving, operating machinery and whatnot. I believe that's all, Your Honor.

. . . .

MJ: . . . Why do you believe you're responsible for your actions while driving after taking Ambien?

. . . .

[Appellant]: Your Honor, um, previously before coming to, I do remember that my car was running low on gas, and I had been thinking about getting gas, so it's possible that I went out and dr[o]ve voluntarily to prepare for the night to get gas. I think that was my motive behind driving voluntarily. I just don't remember the facts. And upon coming to, it didn't feel like I was

asleep. Just felt more like my memory just kind of kicks back in for a period.

MJ: So, although you don't have a memory of driving, do you believe that during the time you don't have a memory, that you were aware of what you were doing?

[Appellant]: Yes, Your Honor.

MJ: And why do you believe that?

[Trial defense counsel]: May we have a moment, Your Honor?

MJ: You may.

. . . .

[Appellant]: I believe that I was aware of where I was at stop-lights. I was aware of the honking. I was able to get back home. I know music was playing. I believe those are voluntary actions. That's why, Your Honor.

Counsel for both sides responded in the negative when asked by the trial judge if they believed further inquiry was required. The trial judge again found Appellant's pleas provident, accepted the pleas, and advised Appellant that he may "request to withdraw" the "guilty plea at any time before sentence is announced," and the request would be granted if there was "a good reason" for the request.

Neither Appellant nor his trial defense counsel requested to withdraw the guilty plea prior to announcement of the sentence. After a presentencing hearing, the trial judge sentenced Appellant to a bad-conduct discharge, confinement for two years and two months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.

## II. DISCUSSION

### A. Providency of Reckless Driving Plea

#### 1. Law

We review a military judge's decision to accept the accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "An abuse of discretion occurs when there is 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'" *Id.* (quoting *Inabinette*, 66 M.J. at 322). The military judge's legal conclusion about the providency of the plea is reviewed de novo. *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005).

Appellate courts will not speculate on the existence of facts that might invalidate a plea especially where the matter raised post-trial contradicts an appellant's express admission on the record. *See United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995). "[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted).

"This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (quotation marks and citation omitted). We apply a "substantial basis" test by determining "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322.

In reviewing the providence of an appellant's guilty pleas, "we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (quoting *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007)).

Appellant pleaded guilty to reckless driving, in violation of Article 113, UCMJ. To be found guilty, Appellant's plea inquiry must provide factual support for each element of the offense: (1) that Appellant was in physical control of a passenger car; and (2) that Appellant physically controlled the car "in a reckless manner by causing the vehicle to block traffic and swerve on public roadways[,] and by driving the vehicle after using Zolpidem." *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 51.b.

An Appellant "cannot be held criminally liable in a case where the actus reus is absent because [the appellant] did not act voluntarily, or where mens rea is absent because [the appellant] did not possess the necessary state of mind when he committed the involuntary act." *United States v. Torres*, 74 M.J. 154, 157 (C.A.A.F. 2015). "However, even if the military judge did not abuse his discretion in accepting the plea, we still may set aside the plea if we find a substantial conflict between the plea and [an appellant's] statements or other evidence in the record." *United States v. Rothenberg*, 53 M.J. 661, 662 (A.F. Ct. Crim. App. 2000) (citing *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)).

**2. Analysis**

Appellate defense counsel asks us "whether [Appellant's] guilty plea for reckless driving was provident when he took his prescribed dose of Ambien,

fell asleep in his bed, and 'the next thing [he] remember[ed] is being behind the wheel of [his] car.'" We answer in the affirmative.

This assignment of error questions whether, despite his plea at trial, Appellant committed an involuntary act when he drove his vehicle recklessly on 1 October 2021. Whether the Ambien caused involuntary "actus reus" on Appellant's part was not raised by *evidence* introduced at trial and was explicitly denied by Appellant.

Appellant explained he was driving his vehicle after work, and before speaking with police officers. He had the keys, he was seated in the driver's seat, and no one else was with him. These facts were not disputed or contradicted. Appellant explained he understood he was witnessed driving recklessly by causing his vehicle to block traffic at a stop light when the light turned green, and when he stopped his vehicle in a turning lane instead of turning into his apartment complex, and by hitting a lamppost. Appellant explained that he understood he was seen swerving between lanes by at least one witness while on public roadways in the state of Washington. He had discussed his case with his trial defense counsel and had been told of the evidence gathered in this investigation. He admitted under oath that he took his prescription dose of Ambien and intended to "take a nap" but later found himself behind the wheel of his vehicle.

Appellant asserted to the trial judge that he acted voluntarily and had a lack of memory—not a lack of awareness of all his actions while driving. Appellant admitted that he heard "honking" from other vehicles while he was stopped, remembered hearing his music playing, and knew he must have put his "shoes" back on, procured his keys, and drove his vehicle most likely to "get gas for the evening." Appellant believed his loss of memory, while attributed to the Ambien, did not "feel" like sleep. Comparing Appellant's statements in his first *Care* inquiry to his statements in his second *Care* inquiry, we do not find conflicts, but additional details.

On appeal, Appellant highlights evidence presented in findings that is inconsistent with his guilty plea. The Defense admitted the FDA advisory on Ambien, which included a reference to sleep-driving. The Defense cross-examined the Government's toxicologist who agreed Ambien could cause sleep-driving. The Defense called the provider who prescribed Appellant Ambien, who agreed involuntary acts while on Ambien were documented, though "not common." What was not demonstrated at trial, however, was that *Appellant* was sleep-driving. The witness testimony strongly supported an inference that Appellant was awake while driving. Moreover, during the *Care* inquiries, Appellant disavowed that he was asleep while driving. Appellant never withdrew his guilty plea, despite being specifically advised by the trial judge that he could do so before sentencing, twice.

We will not speculate on the existence of facts that might invalidate a plea especially where the matter raised post-trial contradicts an appellant's expressed admission on the record. *See Johnson*, 42 M.J. at 445. Further, we do not find a substantial conflict between Appellant's guilty plea and other evidence because the record lacks evidence Appellant was sleep-driving. *See Rothenberg*, 53 M.J. at 662. We find the trial judge did not abuse his discretion.

**B. Sufficiency of Wrongful Use of Ambien Conviction**

**1. Law**

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing R.C.M. 918(c)) (additional citation omitted). "[A] rational factfinder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). As a result, "the standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration and citation omitted).

"The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Rodela*, 82 M.J. at 525 (alterations in original) (quotation marks and citation omitted). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element

beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

To convict Appellant of wrongful use of Zolpidem (Ambien), the Government was required to prove four elements beyond a reasonable doubt: (1) Appellant used Zolpidem, a Schedule IV controlled substance, in or around the state of Washington on or about 1 October 2021; (2) he actually knew he used the substance; (3) he actually knew that the substance he used was Zolpidem; and (4) Appellant's use was wrongful. *See MCM*, pt. IV, ¶ 50.b.(2).

Use of a controlled substance is wrongful if it is without legal justification or authorization. *See id.* Use of a controlled substance is not wrongful if the controlled substance is prescribed by a doctor and the use of the substance is for the medical purpose prescribed. *See id.* However, if a prescribed substance is used for a purpose other than that for which it is prescribed, it is wrongful. *Mull*, 76 M.J. at 746.

This court

> may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as [this court] finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, [this court] may weigh the evidence, judge the credibility of witness[es], and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

"A guilty plea and related statements to one offense cannot be admitted to prove any element of a separate offense." *United States v. Flores*, 69 M.J. 366, 369 (C.A.A.F. 2011) (footnote omitted). "A military judge who advises [an appellant] that [he] is waiving [his] right against self-incrimination only to the offenses to which [he] is pleading guilty must not later rely on those statements as proof of a separate offense." *Id.* at 369–70 (citing *United States v. Resch*, 65 M.J. 233, 237 (C.A.A.F. 2007)). However, in circumstances where an accused pleads guilty to a lesser included offense, that accused's statements during his guilty plea may be used to establish facts and elements common to both the greater and lesser offense within the same specification. *See United States v. Grijalva*, 55 M.J. 223, 227–28 (C.A.A.F. 2001) (citations omitted).

### 2. Analysis

At trial, and on appeal, Appellant submits the Government could not, and did not, provide sufficient evidence to prove wrongful use of Ambien. We find the evidence presented on the merits supports a finding that Appellant used Ambien wrongfully, that is, not for the purpose of sleep.

Although Appellant chose to inform the members of his guilty pleas at the onset of the litigated findings, neither the Defense nor the Government admitted as evidence before the court the details described by Appellant of his Ambien use during his providency inquiries. Specifically, his explanation of taking the prescribed dose while in his apartment after arriving home from work, for the purposes of taking a nap, were facts not in evidence before the panel as to the offense of wrongful use of Ambien.

The facts that were admitted into evidence and before the court-martial members include that Appellant was prescribed Ambien on 30 September 2021. According to his first sergeant, Appellant normally worked from 0630 to 1630. On 1 October 2021, a work day for Appellant, he was seen driving recklessly in his car, on the public roadways, driving in the direction leaving the base, after normal hours but before the sun went down, wearing his uniform (except for his outer blouse). In addition to being seen rocking back and forth in the driver's seat and appearing to have a smile on his face, he was observed swerving on the road, blocking traffic, driving up on a sidewalk, hitting a lamppost, and then attempting to park in a parking stall near his apartment building. When confronted by the police, Appellant told them that he had taken Ambien. A receipt from Walgreen's pharmacy filling Appellant's prescription was seen in his car, face up on the front passenger seat. In his interactions with the police, he was calm, responsive to their questions, cooperative, and ambulatory.

As to legal sufficiency of this specification, after a thorough review of the evidence and evaluating it in the light most favorable to the Prosecution, we find any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. While the evidence admitted is circumstantial, reasonable inferences drawn from it establish the trier-of-fact could find beyond a reasonable doubt that Appellant ingested the Ambien wrongfully. *See Barner*, 56 M.J. at 134.

As to factual sufficiency, we have taken "a fresh, impartial look at the evidence, applying neither a presumption of innocence nor a presumption of guilt to make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Wheeler*, 76 M.J. at 568 (alteration in original) (quotation marks and citation omitted). SPC MD witnessed Appellant driving his personal vehicle in the state of Washington, on 1 October 2021, and Appellant informed the responding police officers that he used Ambien (element one). One police officer testified Appellant stated he actually knew he used Ambien (element two). The prescription receipt was found in Appellant's vehicle, which demonstrates Appellant knew the substance he used was Ambien (element three). And Appellant took the Ambien sometime during the day, before driving home, while still in uniform,

without preparing himself for a full seven to eight hours rest, which demonstrates that Appellant's use was not consistent with preparing for sleep within 30 minutes and for seven to eight hours, which was not in accord with his prescription and was therefore, wrongful (element four). *See MCM*, pt. IV, ¶ 50.b.(2).

Appellant would have us consider his statements during the *Care* inquiry to find his conviction for wrongful use of Ambien legally and factually insufficient. Appellant misapprehends the boundaries of the law. Consistent with the principles articulated in *Flores*, Appellant is not entitled to rely upon *Care* inquiry statements as substantive proof in an effort to refute the evidence actually admitted at findings. While the United States Court of Appeals for the Armed Forces in *Flores* found error in the Government's invocation of that appellant's *Care* inquiry statements to support proof of a separate offense, 69 M.J. at 370, the *Flores* opinion does not suggest an accused may use this "shield" as a "sword" and endeavor to use *Care* inquiry statements for his own purposes of challenging a separate offense.

We are convinced of Appellant's guilt beyond a reasonable doubt. *See Rodela*, 82 M.J. at 525. We find Appellant's conviction for wrongful use of Ambien is both legally and factually sufficient.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

19